UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JAMES VEAL

Plaintiff                              Civil Action No. 14-cv-12967-WGY

V.

Defendants

KENNETH WILSON

LUSTIG GLASER & WILSON P.C

DEAN A. HEINOLD

PORTFOLIO RECOVERY INC

PORTFOLIO RECOVERY ASSOCIATES, LLC

IC SYSTEM INC.

CREDIT ONE BANK

CAPITAL ONE

Defendants

## PLAINTIFF NOTICE OF JUDICIAL NOTICE

1. Now comes the plaintiff (James Veal) to request the court to take judicial Notice of The Pamela Cappetta V GC Service decision (**Exhibit 1**) from the **United States District Court, Eastern Division Virginia**.

2. In this decision **Chief Judge James R. Spencer points to the fact** that 1681b (A)(3)(A) is only for a Consumer Reporting Agencies (CRA) (Experian, Equifax & Trans Union) not a debt collector or a furnisher of information, this fact is neither disputed nor capable of dispute the Fair Credit Reporting Act (FCRA) statue also points to the same.

3.  The defendants claim of permissible purpose includes their claim that 15 U.S.C. § 1681b(a)(3)(A)
    clearly defines their right for them to pull plaintiff credit report and provides them with permissible
    purpose, the language of that section in the FCRA states:

    **FCRA § 604 – [15 U.S.C. § 1681b]**

(a) In general. Subject to subsection (c), **any consumer reporting agency** may furnish a consumer
    report under the **following circumstances and no other**:

(1). In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in
    connection with proceedings before a Federal grand jury.

(2). In accordance with the written instructions of the consumer to whom it relates.

**(3). To a person which it has reason to believe**

**(A) intends to use the information in connection with a credit transaction  involving the consumer
    on whom the information is to be furnished and involving the extension of credit to, or review
    or collection of an account of the consumer, or**

4. **15 U.S.C. § 1681b** (a)(3)(a) clearly states that the statue pertains to the "Credit Reporting Agency"
(Experian, Equifax & Trans Union) and not to the collectors or furnisher of information. The language
quite clearly outlines the responsibility of the CRA to determine that they are furnishing a credit report
to an entity or individual who the CRA has "reason to believe" has a legitimate purpose. This is
established by one of the smallest and seemingly insignificant words in the English language. The word
IT in number (3) indicates reference to the entity identified in (a), the **consumer reporting agency** and
only to that entity.

5. This section only applies to the CRA,s (Trans Union, Experian & Equifax) and **its reason to believe** that the entity they are supplying with the consumers information has a legal and legitimate purpose for having it and that they can be trusted to use it for no other purpose. Obviously the defendants cannot rely on a section of the statute that clearly does not apply to them but thus far they have been getting away with it ever since the language was written.

6. The United States District Court for the Eastern District of Virginia Chief Judge James Services has pointed out the flaw in the civil action No. 3:08-CV-288 Pamela Cappetta V GC Services (Exhibit 1).

7. The United States District Court for the Eastern District of Virginia is a Government agency and the documents are self authenticated and plaintiff request for the issue of 1681b(a)(3)(a) be adjudicative facts on the record.

8. With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy. This tradition of circumspection appears to be soundly based, and no reason to depart from it is apparent.

9. The statutes allow the court to take judicial notice of the authenticity of these facts or documents, Federal Rule of Evidence 201 states: "The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201 goes on to state that upon the request of a party, a court may take judicial notice of a fact as long as the party provides the court with the necessary showing that the fact is not subject to reasonable dispute.

## CONCLUSION

For all the reasons set forth above, Plaintiff respectfully request that this Court take judicial notice of the identified facts attached Exhibit 1 (Pamela Cappetta V GC Services). Both Government agencies and documents are self authenticated and plaintiff request for the issue of 1681b (a)(3)(a) be adjudicative facts on the record

Respectfully Submitted

Dated January 2, 2015

James Veal   /S/ JAMES VEAL

125 Entervale Street

Dorchester, Ma 02121

jamesveal007@gmail.com

Andrew Schneiderman

Ranen S. Schechner

Hinshaw & Culbertson LLC
28 State Street
Boston, MA 02109
617-213-7000
aschneiderman@hinshawlaw.com

rschechner@hinshawlaw.com


Brain Hogencamp

Lustig Glaser & Wilson P.C

245 Winter Street #300

Waltham, MA 02451

bhogencamp@lgw.com

## CERTIFICATE OF SERVICE

I James Veal certify that on the 2nd day of January 2015 I emailed and mailed a copy to all attorneys of

records.


Respectfully Submitted
Dated: January 2, 2015


James Veal /S/ JAMES VEAL

125 Entervale Street

Dorchester, Ma 02121

jamesveal007@gmail.com


Andrew Schneiderman

Ranen S. Schechner

Hinshaw & Culbertson LLC
28 State Street
Boston, MA 02109
617-213-7000
aschneiderman@hinshawlaw.com

rschechner@hinshawlaw.com


Brain Hogencamp

Lustig Glaser & Wilson P.C

245 Winter Street #300

Waltham, MA 02451

bhogencamp@lgw.com

# Exhibit 1

Cappetta v. Gc Services Ltd. Partnership, 654 F.Supp.2d 453 (E.D. Va., 2009)

654 F.Supp.2d 453
**Pamela G. CAPPETTA, Plaintiff,**
v.
**GC SERVICES LIMITED PARTNERSHIP, Defendant.**
Action No. 3:08-CV-288.
United States District Court, E.D. Virginia.
September 4, 2009.
Page 454
Leonard Anthony Bennett, Consumer Litigation Assoc. PC., Newport News, VA, Jason Meyer Krumbein, Krumbein Consumer
Page 455
Legal Services Inc., Richmond, VA, Matthew James Erausquin, Consumer Litigation Associates PC, Fairfax, VA, Richard John Rubin, Santa Fe, NM, for Plaintiff.
Brian Brooks, O'Melveny & Myers LLP, Washington, DC, Charles Michael Sims, John MacDonald Robb, III, LeClair Ryan PC, Richmond, VA, David Matthew Schultz, Todd Stelter, Hinshaw & Culbertson LLP, Chicago, IL, for Defendant.
*MEMORANDUM OPINION*
**JAMES R. SPENCER, Chief Judge.**

THIS MATTER is before the Court on Defendant's Motion for Judgment on the Pleadings (Docket No. 161), filed July 2, 2009, and Plaintiff's oral motion for voluntary dismissal with prejudice as to Counts II and IV, offered at the hearing of this matter September 1, 2009. For the reasons that follow, the Court will GRANT Plaintiff's Motion, DISMISS WITH PREJUDICE Counts II and IV, and DENY the Motion for Judgment on the Pleadings as to Counts I and III.

I. *BACKGROUND*

Plaintiff is a natural person who resides in the Commonwealth of Virginia. Defendant is a limited partnership with its primary headquarters in Texas doing business in the Commonwealth through its registered offices in Glen Allen, Virginia.

Plaintiff filed her Complaint May 9, 2008, alleging Defendant violated the Fair Debt Collection Practices Act. According to Plaintiff, on May 21, 2007, a representative of Defendant called her place of business regarding a $10,444.59 debt owed to American Express by her estranged husband, Robert Cappetta ("Mr. Cappetta"), by virtue of a credit card account ("Account") he had opened. Defendant, having failed to persuade Mr. Cappetta to pay the bill,

told Plaintiff through its representative that she needed to pay the debt within seven days because Plaintiff's social security number was on the application for the credit card and Defendant possessed the Account's application with her signature.

Apparently, this was not true. Defendant never possessed the application, and Plaintiff's social security number never appeared thereon. Unbeknownst to Plaintiff, Mr. Cappetta had applied for the Account utilizing a P.O. Box he maintained although he had previously claimed to close it. Plaintiff alleges Defendant had obtained her personal information used during the May phone call through a "skip trace" consumer report ("Skip Trace"). Utilizing the information contained in the Skip Trace, Defendant obtained a full credit report ("Credit Report") from Experian Information Solutions, Inc. ("Experian"). In order to obtain the Credit Report, Defendant represented to Experian that it was collecting on an account resulting from Plaintiff's credit transactions.

Responding to the representative's claims during the call, Plaintiff requested the documentation demonstrating she was obligated to pay on the Account in order to review it with her attorney. Defendant's representative stated that Plaintiff's attorney would likely advise her

regard as true all of the factual allegations in the complaint, *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Conversely, the court does not have to accept legal conclusions couched as

Page 457

factual allegations, *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000).

While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. ___, ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). Since a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must allege facts that show a plausible, not merely speculative, claim for relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted); *see*Fed.R.Civ.P. 8(a)(2). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. While Rule 8(a)(2) requires a showing, not simply a blanket assertion of "entitlement to relief," the plaintiff is not required to show that it is likely to obtain relief. *Twombly,* 550 U.S. at 556 n. 3, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1949. If the complaint alleges—directly or indirectly— each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. *Twombly,* 550, U.S. at 563 n. 8, 127 S.Ct. 1955.

III. *DISCUSSION*

Because Plaintiff has voluntarily dismissed her other theories of recovery, the Court will only address Counts I and III of the Second Amended Complaint, which allege violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f) (2006) ("FCRA"), and Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (2006) ("FDCPA"), respectively.

A. *Fair Credit Reporting Act*[1]

The FCRA allows access to a consumer's credit report only under specific circumstances where a permissible purpose exists. 15 U.S.C. § 1681b(a) (2006) ("[A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other"). As for "permissible purposes," Congress declared a credit reporting agency may provide a consumer's credit report:

> To a person the credit reporting agency has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;" or "otherwise has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer."

15 U.S.C. §§ 1681b(a)(3)(A), (a)(3)(F)(i) (2006). According to § 1681b(f), "A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

Relying on *Korotki v. Thomas, Ronald & Cooper, P.A.,* 131 F.3d 135 (table), 1997 WL 753322 (4th Cir. Dec. 5, 1997) (*per curiam*) ("*Korotki 2*"), Defendant argues that the Court should dismiss this claim because it had a permissible purpose for obtaining Plaintiff's credit report under

not to pay the Account but would fail to explain to Plaintiff the severe negative implications of failing to pay off the Account. According to this representative, Plaintiff could only avoid receiving derogatory information on her heretofore excellent credit report by paying the full amount demanded within seven days.

In addition to utilizing information from the Skip Trace and Credit Report, Defendant's representative also stated, in her conversation with Plaintiff, that she had faced a similar circumstance in the past and had determined the best course was to

Page 456

pay the charges in order to have closure. At Defendant's urging, even though she had not applied for, used, and had knowledge of the Account prior to Defendant's call, Plaintiff paid the debt demanded during the May 21, 2007 phone call. She did so, not only because of Defendant's various falsehoods or misrepresentations (including Defendant's representative's fabricated identity, the claim that she possessed Plaintiff's signature and social security number on the Account application, and the story about her analogous situation in the past), but also because she was then in the process of refinancing her home and depended upon her favorable credit score to successfully complete the process. Plaintiff argues the following representations were also false: (1) the effect the threatened collection notation would have on Plaintiff's credit score, (2) the sworn certification to Experian stating a credit relationship existed between American Express and Plaintiff, and (3) the seven-day time frame for payment of the Account.

Despite Plaintiff's request, Defendant never furnished the documentation that supposedly demonstrated Plaintiff's obligation on the Account, although its representative had promised to do so. After consulting with several individuals, Plaintiff called Defendant and again asked for the documentation of her obligation on the Account. Through another representative, Defendant refused to provide the documentation

and stated Plaintiff had to contact American Express directly. Defendant further suggested that doing so would likely be unavailing because American Express would only respond to a subpoena. Defendant's representative stated the only documentation it would send Plaintiff is a letter stating that the payment had been received.

Thereafter, Plaintiff contacted American Express directly. Initially, American Express representatives would not discuss the account with Plaintiff because she was not listed on the account, but, eventually, an American Express official informed Plaintiff that the Account did not list her as an obligor and that American Express did not have her social security number. In addition, American Express stated that the Account only listed Plaintiff as an "authorized user" and, accordingly, it had at no time provided Defendant with her social security number.

Based on these facts, Plaintiff, on or about August 8, 2007, wrote Defendant and demanded a refund of the money she had paid. Defendant has refused to return it.

## II. *LEGAL STANDARD*

A court reviews a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, under the same standard as a Rule 12(b)(6) motion to dismiss. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir.2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). When considering the motion, the court views the facts presented in the pleadings in the light most favorable to the nonmoving party. *Edwards v. City of Goldsboro*, 178 F.3d 231, 248 (4th Cir.1999).

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.2007). Thus, in ruling on a Rule 12(b)(6) motion, a court must

Page 458

§§ 1681b(a)(3)(A) and (E).[2] According to Defendant, "The Fourth Circuit has expressly held that seeking to collect a disputed debt is a permissible purpose under the FCRA." (Def.'s Mem. Supp. Mot. J. on Pleadings ("Def.'s Mem.Supp.") 5.) "The fact that plaintiff now contends the debt was owed by her husband (estranged or otherwise) is . . . of no moment," Defendant claims, because *Korotki 2* counsels that Defendant did not need to wait until a claim has "been reduced to judgment before obtaining a consumer report." (*Id.* (citing *Korotki 2*, 1997 WL 753322, at *2; *Baker v. Bronx-Westchester Investigations, Inc.*, 850 F.Supp. 260, 262-63 (S.D.N.Y.1994)).) Moreover, Defendant argues that the Fourth Circuit and other courts have allowed access to a spouse's credit report under certain circumstances where either or both spouses owed a debt. (*Id.* (citing *Smith v. GSH Residential Estate Corp.*, No. 90-1166, 935 F.2d 1287 (table), 1991 WL 106191 (June 20, 1991) (finding permissible purpose for landlord accessing credit report of spouse of prospective tenant where landlord had no reason to know of plaintiff's separation); *Simoneaux v. Brown*, 403 F.Supp.2d 526, 537 (M.D.La.2005) (finding permissible purpose for accessing spouse's credit report based on presumption of community obligation under Louisiana law); *Short v. Allstate Credit Bureau*, 370 F.Supp.2d 1173, 1179-80 (M.D.Ala.2005) (finding permissible purpose for accessing spouse's credit report where spouse will use the account or be contractually liable on the account)).)

Plaintiff responds that Defendant violated the FCRA because it "willfully and intentionally" obtained Plaintiff's credit report knowing that it lacked a permissible purpose for doing so. (Pl.'s Mem.Opp'nDef.'s Motion Judgment Pleadings ("Pl.'s Opp'nMem.") 2.) Moreover, Plaintiff posits that Defendant failed to satisfy the certification requirement under § 1681e(a)[3] in that it could not—and did not—certify that it was obtaining the credit report for a purpose appropriate under § 1681b(a)(3). (*Id.* 3-4.) Plaintiff's argument here has at least four parts: (1) Defendant could not claim it had a

"legitimate business purpose" for Plaintiff's credit report because that provision requires that Plaintiff initiate the business transaction that serves as the alleged basis for obtaining the credit report (Pl.'s Opp'nMem. 5); (2) Defendant failed to certify it was obtaining Plaintiff's credit report on the basis of § 1681b(a)(3)(F) (*id.* 5-6); (3) Section 1681b(a)(3)(F) cannot be used independently of § 1681b(a)(3)(A)—(C) (*id.* 6 n. 6); (4) Section 1681b(a)(3)(A) does not provide a permissible purpose because Defendant knew the American Express Card did not belong to Plaintiff but instead belonged to her estranged husband (*id.* 6-10).

Page 459

Defendant replies, first, that the amended version of § 1681b(a)(3)(F) does not bar its access to Plaintiff's credit report because—even if she "neither 'initiated' nor was 'involved' in making charges to the American Express credit card"—the correct FCRA inquiry is whether Defendant had a "reasonable basis" to believe that a permissible purpose existed at the time it requested the report. (Def.'s Reply Supp. Mot.J. on Pleadings ("Def.'s Reply Mem.") 2, 6.) In short, Defendant submits Plaintiff's actual situation at that time matters not because Plaintiff's name appeared as an authorized user on the American Express credit card, the account was delinquent, and American Express had reported the account to the credit bureaus in Plaintiff's name, giving Defendant a "reasonable belief" that a permissible purpose existed. (*Id.*)

*1. A "Permissible Purpose" Via Section 1681b(a)(3)(F)*

The pleadings do not support Defendant's contention that a permissible purpose existed under 1681b(a)(3)(F).

Congress amended the FCRA in 1996. *See* Pub.L. No. 104-208, § 2403, Aug. 22, 1996, 110 Stat. 3009 (codified as 15 U.S.C. § 1681b(a)(3)(F)). Prior to that amendment, § 1681b(a)(3)(E) stated a credit agency could furnish a consumer's credit report when it had reason to believe the person seeking the report

had an otherwise "legitimate business need for the information in connection with a business transaction *involving* the consumer." Pub.L. No. 90-321, Title IV, § 604, as amended Pub.L. 91-508, Title VI, § 601, 84 Stat. 1129 (codified as 15 U.S.C. § 1681b(3)(E)) (Oct. 26, 1970); *see Korotki v. Att'yServs. Corp. Inc.*,931 F.Supp. 1269, 1275 (D.Md.1996) ("*Korotki 1*"), *aff'd* No. 96-1877, 131 F.3d 135 (table), 1997 WL 753322 (4th Cir. Dec. 5, 1997). Congress amended this language to state a credit report could be furnished where an "otherwise . . . legitimate business need for the information" existed "in connection with a business transaction that is *initiated by* the consumer"—a stricter standard. 15 U.S.C. § 1681b(a)(3)(F).

Congress clearly directs the relevant portion of the FCRA toward "credit reporting agencies."[4]*See* § 1681b(a) ("Subject to subsection (c) of this section [inapplicable here], any *consumer reporting agency* may furnish a consumer report under the following circumstances and no other.") (emphasis added). Specifically, subsection (a) allows the credit reporting agency to provide a credit report "[t]o a person which *it has reason to believe*. . . (F) otherwise has a legitimate business need for the information." § 1681b(a)(3)(F) (emphasis added). The statute requires that the credit reporting agency (antecedent of the third person singular pronoun "it") have "reason to believe" the "person" to which it provides a credit report "has a legitimate business need for the information." Without having such a belief, a credit reporting agency may be held liable.

The statute here, however, says nothing about the standard to which the relevant "person" or "user" must be held when certifying a permissible purpose. Even though this section only specifically addresses the requisite intent for violations committed by credit reporting agencies,

Page 460

the Fourth Circuit has relied on § 1681b(a)(3) for guidance where the "person" or "user" who obtained credit report has been sued for

impermissibly accessing a consumer's credit report. *See Korotki 2*, 1997 WL 753322, at *2 ("While this language might arguably apply only to consumer agencies, we conclude that the wording is equally applicable to a user.") (*citingYohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987); *Hansen v. Morgan*, 582 F.2d 1214, 1216 (9th Cir.1978)). The parties have somewhat different views as to whether, for the purposes of this Motion, the Court must determine that the pleadings sufficiently allege Plaintiff did not initiate the American Express account (Plaintiff's position) or that Defendant lacked a reason to believe Plaintiff initiated the account (Defendant's position).

In *Korotki 2*, the Fourth Circuit affirmed the district court's grant of summary judgment but did not explicitly state that a user need only have "reason to believe" a permissible purpose exists when it seeks a consumer's credit report— as opposed to a demonstration that the permissible purpose actually existed prior to certifying its existence. *See Korotki*, 1997 WL 753322, at *2; *cf. Korotki,* 931 F.Supp. at 1276 ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA."). The court instead focused more squarely on the parties' dispute over whether the FCRA applied to users, not credit reporting agencies exclusively. In its brief explanation, the Fourth Circuit states, "[W]e conclude that the wording [of § 1681b] is equally applicable to a user. Under § 1681(b) [sic], a user may only obtain a consumer report for a permissible purpose therein enumerated." The Fourth Circuit does not expressly adopt the district court's language in *Korotki 1* to state that a user may obtain a consumer report where it *has reason to believe* a permissible purpose therein enumerated *exists*. *See*931 F.Supp. at 1276-77. It did not need to reach that specific question to affirm summary judgment based on the facts presented by the record. *Korotki,* 1997 WL 753322, at *2 ("Appellant has made no showing that the report was obtained for an impermissible purpose. We experience no difficulty under the

facts of this case in concluding that seeking to obtain an alternate address at which to serve appellant was 'a legitimate business need for the information in connection with a business transaction involving[5] the [appellant]'; and, therefore, a permissible purpose for its use.") (internal citation omitted; alteration in original).

Both the district court and the Fourth Circuit relied on the Fourth Circuit's reasoning in *Yohay*, 827 F.2d 967. There, the Fourth Circuit explicitly incorporated the "permissible purposes" under § 1681b into the civil liability provisions of the FCRA found in Sections 1681n and 1681o of the contemporaneous version of statute which applied to "any . . . user of information" that willfully or negligently failed to comply with the statute's requirements.[6]*Id.* at 971-72 (finding civil liability

Page 461

lies where a "user's individual noncompliance with section 1681b was willful"). The Fourth Circuit here clearly states that a violation of the FCRA occurs when a user either willfully or negligently fails to comply with § 1681b—that is, where a user either willfully or negligently obtains a consumer's credit report without a permissible purpose, the user is civilly liable to the consumer.[7]

In light of the Fourth Circuit's approach in *Yohay*, the Court finds that the Plaintiff may state a claim for relief under § 1681b(a)(3)(F) (and survive the present Motion), if she has alleged, with sufficient factual support, that Defendant either willfully or negligently obtained her credit report without having a legitimate business purpose for doing so. Here, that means Plaintiff must have proffered factual allegations (taken as true along with reasonable inferences drawn therefrom) supporting that, at the very least,[8]Defendant obtained her credit report when it reasonably should have known that Plaintiff had not initiated a business transaction with American Express.

Plaintiff has satisfied this burden. The Complaint alleges: "At the time it obtained the

Plaintiff's consumer report pursuant to this certification [under § 1681b(a)(3)(A)], the Defendant *knew* it was not in possession of any application on the account and that Plaintiff was only listed, at most, as a supplemental cardholder on the account" (Compl. ¶ 10) (emphasis added); "American Express does not issue joint accounts" (*id.* ¶ 12); "[i]n response to the electronic communication containing the *false* certification, Experian furnished to the Defendant a consumer report. . . ." (*id.* ¶ 13) (emphasis added); "American Express never represented to the Defendant that Plaintiff was obligated on the Robert Cappetta account" (*id.* ¶ 21); "American Express never provided Plaintiff's social security number to the Defendant regarding the Robert Cappetta account" (*id.* ¶ 22); "[t]he Defendant never possessed a copy of any application with regard to the account at any time and was not in possession of the same when its employee spoke to the Plaintiff [and stated that Defendant in fact possessed the application]" (*id.*¶¶ 26-27); "[t]he Defendant *willfully* and *intentionally* violated the [FCRA] by using or obtaining one or more consumer reports that regarded Plaintiff . . . without a permissible purpose" (*id.* ¶ 70) (emphasis added). Even though Plaintiff does not explicitly or formulaically state in the Complaint "Defendant should have known Plaintiff did not initiate a business transaction with American Express," these facts, alleged to have occurred *prior* to Defendant obtaining the credit report, along with reasonable inferences drawn from them in Plaintiff's favor,[9] establish

Page 462

that Defendant either knew or should have known that Plaintiff had not initiated the Account.[10]

Defendant makes much of the fact that the Complaint states, "Plaintiff had learned a few days earlier in conjunction with a mortgage application that American Express was reporting that she was an authorized user on an unknown account within her credit file . . . ." (*id.* ¶ 31.) Presumably on the basis of this allegation, Defendant argues the Complaint demonstrates

Cappetta v. Gc Services Ltd. Partnership, 654 F.Supp.2d 453 (E.D. Va. 2009)

"an American Express account was opened" and "that Plaintiff's name was associated with the account as an authorized user who could have incurred charges on the account" thereby supporting the contention that it reasonably believed it had a permissible purpose for accessing the report. (Def.'s Reply Mem. 6.) It takes this position in spite of the fact that the question at this juncture—as it acknowledges— is what *Defendant* should have known *before* it obtained Plaintiff's credit report. (*Id.* 6.) Because the relevant question is what Defendant reasonably should have known prior to attempting to access the report, it seems circularly-misguided to justify Defendant's access to Plaintiff's credit report based upon what apparently appeared in that report and Defendant could not have observed prior to accessing it. Moreover, this portion of the Complaint refers to Plaintiff's knowledge, not Defendant's. Clearly, what Plaintiff knew about her credit report does not elucidate the knowledge Defendant had prior to contacting Experian. The Complaint does not allege that Defendant knew the Account had been opened, that Defendant knew it was delinquent, or that Defendant knew Plaintiff's name appeared on the Account as an authorized user; that, of course, would likely be dispositive. Plaintiff states quite the contrary. (*See*Compl.¶¶ 5, 10, 21, 27.) Because Defendant can only rely on what information the Complaint alleges Defendant possessed prior to obtaining Plaintiff's credit information, neither what the Credit Report contained nor what Plaintiff knew about the contents of the Credit Report support Defendant's position.

### 2. A "Permissible Purpose" Via Section 1681b(a)(3)(A)

To survive the Motion with regard to § 1681b(a)(3)(A), the Complaint must allege facts sufficient to demonstrate that Defendant should have known either that it did not intend to use the credit report "in connection with a credit transaction involving" Plaintiff or "involving . . . the collection of an account of" Plaintiff. A user must certify both parts in order to obtain a consumer's credit report. *See* §

1681b(a)(3)(A)("Any consumer reporting agency may furnish a consumer report . . . To a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished *and* involving the . . . collection of an account of, the consumer.") (emphasis added). This means, specifically, that Plaintiff withstands the instant Motion if the pleadings demonstrate that Defendant should have known the Account did not "involve" Plaintiff or should have known that the Account did not belong to Plaintiff.

### Page 463

Based on the facts recited above (*see*Compl. ¶¶ 10, 12, 21-22, 26-27, 70), taken as true with inferences drawn in Plaintiff's favor (excluding the information contained in the credit report itself), Plaintiff has successfully pleaded that Defendant should have known the Account did not belong to Plaintiff. Even if Plaintiff was an "authorized user," that does not amount to obligor status. *See Barrer v. Chase Bank USA, Inc.*, 566 F.3d 883, 885 n. 1 (9th Cir.2009) ("Cheryl Barrer was an "Authorized User," and therefore not legally responsible for the account."); cf. Permissible Purpose for Judgment Creditor—FCRA § 604(a)(3)(A), Staff Op. Ltr., F.T.C. Division of Credit Practices, 1998 WL 34323750 (Aug. 5, 1998) (opining that collection from nonliable spouse not a permissible purpose under FCRA). Because the allegations recited above allege that Plaintiff was not an obligor on the Account, they reasonably imply that Defendant should have known that the Account did not belong to Plaintiff.[11]

In summary, Defendant's basic argument is that whether or not Plaintiff initiated or was obliged to pay this account, the Complaint demonstrates that it had a basis for believing it could access Plaintiff's credit report under the provisions it now cites. The Court has applied a reasonableness standard based upon *Yohay* finding that Plaintiff has stated a claim if she alleges sufficiently that Defendant negligently averred a permissible purpose. She has done so.

Cappetta v. Go Services Ltd. Partnership, 654 F.Supp.2d 453 (E.D. Va. 2009)

Taking the allegations as true and drawing reasonable inferences in Plaintiff's favor, the Complaint alleges that Defendant should have known that Plaintiff did not initiate the American Express account and that Defendant should have known that the Account did not belong to Plaintiff.

Thus, Plaintiff has alleged enough to survive the Motion as to her FCRA claim. Therefore, the Court will DENY the Motion with regard to Count I.

### B. *Fair Debt Collection Practices Act*

#### *1.     Voluntary     Payment     Doctrine Applicability and Preemption*

Defendant argues that the voluntary payment doctrine precludes any recovery to Plaintiff pursuant to the FDCPA claim. To the contrary, Plaintiff argues that, to the extent the doctrine is inconsistent with the FDCPA, the doctrine has been preempted.

As Defendant correctly states, Virginia courts recognize the Voluntary Payment Doctrine. *See, e.g., Williams v. Consolvo,* 237 Va. 608, 379 S.E.2d 333, 336 (1989) (*citing Wessel, D. & Co. v. Winborne& Co.,* 125 Va. 502, 99 S.E. 719, 721 (1919)). Defining the contours of the doctrine in *Wessel,* the Supreme Court of Virginia stated:

> Where a person with full knowledge of the facts voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made. Where money has been paid under a mistake of the facts, or under circumstances of fraud or

> extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted. But such action is not maintainable in the naked case of a party making a payment

Page 464

> of a demand rather than resort to litigation, and under the supposition that the claim, which subsequently turned out to be unauthorized by law, was enforceable against him or his property.

99 S.E. at 721. However, at least with regard to Counts I and III, the Court here exercises jurisdiction by virtue of a federal question, not diversity of citizenship. *See* 28 U.S.C. § 1331 (2006), 15 U.S.C. §§ 1679b, 1679g, 1681p, 1692k(d); *cf.* 28 U.S.C. § 1332. Thus, nothing obliges the Court here to apply state substantive law (including affirmative defenses) to those Counts. The result would be different if the Court exercised jurisdiction pursuant to § 1332, thereby triggering the *Erie* Doctrine. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("*Except in matters governed by . . . acts of Congress,* the law to be applied in any case is the law of the state.") (emphasis added); *cf. Maternally Yours v. Your Maternity Shop,*234 F.2d 538, 540 n.1 (2d Cir.1956) (opining "the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law."). Because Federal statutes supply the elements of Plaintiff's causes of action in Counts I and III, they find no "source in state law" and Erie does not apply. *Cf. Maternally Yours,*234 F.2d at 540 n. 1.

Moreover, Defendant has presented no authority demonstrating that Congress has incorporated the voluntary payment doctrine as a

- 8 -

Cappetta v. Gc Services Ltd. Partnership, 654 F.Supp.2d 453 (E.D. Va. 2009)

defense to the FDCPA claim. During the hearing of this matter, Defendant cited *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J.2009), for the proposition that the voluntary payment doctrine at least implicitly applies to the FDCPA. Defendant misunderstands this case. There, the court refused to certify the "Refund Interest Subclass" that was "limited to prospective class members to whom [two of the defendants] paid a refund without interest as a result of such person being billed an amount in excess of the stated patient responsibility on an Explanation of Benefits." *Id.* at 470 (internal citations and quotation marks omitted). The court refused to certify the subclass because the defendants "ha[d] raised the defense of voluntary payment" by one of the putative class representatives. *Id.* at 472-73. However, the "Refund Interest Subclass" the court refused to certify did not relate to the FDCPA claim at all. In fact, the defendants did not raise a voluntary payment defense with regard to the "Debtor Subclass," the subclass that actually asserted FDCPA claims. *See id.* at 446-47 (identifying the claims of the "Refund Interest," "Equitable Remedy," "Medicare Part B," and "Debtor" subclasses), 478-79 (discussing specific reasons for denying "Debtor" subclass certification, lack of ascertainability). Accordingly, Defendant's reliance on this case is grossly misguided.

Furthermore, even if the voluntary payment doctrine were applicable, the Court would be inclined to agree with *Scott v. Fairbanks Capital Corporation*, 284 F.Supp.2d 880 (S.D.Ohio 2003), and *Gonzalez v. Codilis& Assocs., P.C.*, No. 03 C 2883, 2004 WL 719264, at *3-4 (N.D.Ill. Mar. 31, 2004), which held that the FDCPA preempted the voluntary payment doctrine to the extent the doctrine afforded less protection to consumers than the FDCPA.

### 2. Sufficiency of the Pleadings

The question now remains whether Plaintiff has alleged facts sufficient to sustain a claim for violation of the FDCPA. She has. Plaintiff alleges Defendant: (1) failed to give initial notice, as required by 15 U.S.C. § 1692g, that

she had a right to validate the debt; (2) misrepresented that she was an obligor on

Page 465

the American Express account; misrepresented that American Express had provided it with Plaintiff's social security number; (4) misrepresented that American Express had named her as an obligor on the credit card account; (5) misrepresented that it possessed the credit card application. (Compl.¶ 93.) These misrepresentations, if true, clearly violate 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."). Defendant fails to state any ground other than the voluntary payment doctrine to support this Motion as to the FDCPA claim.

Therefore, finding the doctrine either inapplicable or preempted and, more importantly, the allegations sufficient to sustain the claim, the Court will DENY the Motion with regard to Count III.

### IV. CONCLUSION

For the foregoing reasons, the Court will DENY the Motion for Judgment on the Pleadings as to Counts I and III, GRANT Plaintiff's oral motion for voluntary dismissal with prejudice as to Counts II and IV, and, therefore, DISMISS WITH PREJUDICE Counts II and IV.

Let the Clerk send a copy of this Order to all counsel of record.

It will be SO ORDERED.

---------------

Notes:

1. This Count is the subject of Plaintiff's Motion to Certify Class. (*See*Compl.¶¶ 72-91; Pl.'s Mot. Certify Class (Docket No. 174), filed July 31, 2009.)

2. As Plaintiff points out, Defendant must have mistakenly cited § 1681b (a)(3)(E) (granting

Cappetta v. Gc Services Ltd. Partnership, 654 F. Supp.2d 453 (E. D. Va. 2009)

permission to obtain credit report where person "intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation"). That portion of the statute has no relevancy to the instant facts, unless the Court looks to the statute before its amendment in 1996. Instead, it appears Defendant refers to § 1681b(a)(3)(F), which would apply.

3. Section 1681e(a) requires, "Every consumer reporting agency . . . . shall require that prospective users of [a consumer's credit] information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. . . . No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."

4. According to § 1681a(f), "The term `consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

5. The pre-1996 version of the FCRA applied in this case. *See Korotki* 2, 1997 WL 753322, at *2 (*citing* 15 U.S.C. § 1681b(3)(E)).

6. The current versions of these sections continue to address willful or negligent noncompliance with the FCRA's provisions. 15 U.S.C. § 1681n(a) ("Any person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer. . .

."), 1681o ("Any person who is *negligent* in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer. . . .") (emphasis added).

7. Inapplicable here, the Court also incorporates the criminal liability provision found in § 1681q into the civil liability provisions located at §§ 1681n and 1681o. *Yohay,* 827 F.2d at 971-72.

8. "To prove willfulness, Plaintiff must `show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer.'" *Ausherman v. Bank of Am. Corp.,* 352 F.3d 896, 900 (4th Cir.2003) (*citing Dalton v. Capital Associated Indus., Inc.,* 257 F.3d 409, 418 (4th Cir. 2001)). This would obviously be a stricter standard than a demonstration of negligence.

9. The Court may reasonably infer that Defendant, as a person in the business of regularly collecting debts for American Express knew that: (1) American Express did not issue joint accounts; (2) a supplemental cardholder would not have been the party to initiate a credit card account with American Express; (3) American Express would have provided Plaintiff's name to Defendant, if Plaintiff had initiated the account; and (4) American Express would have provided Plaintiff's social security number, if Plaintiff had initiated the account.

10. Even if the Court accepted Defendant's statement of the standard—that the Complaint must show that Defendant did not have reason to believe Plaintiff initiated a transaction with American Express—these allegations defeat the current Motion as to the FCRA claim.

11. The Court need not determine whether or not the Complaint establishes that Defendant should have known that the Account did not involve Plaintiff.

----------------

# Exhibit 2

940 CMR:   OFFICE OF THE ATTORNEY GENERAL

940 CMR 7.00:         DEBT COLLECTION REGULATIONS

Section

7.01:  Purpose of Regulation
7.02:  Scope
7.03:  Definitions
7.04:  Contact with Debtors
7.05:  Contact with Persons Residing in the Household of a Debtor
7.06:  Contact with Other Persons Regarding a Debt
7.07:  General Unfair or Deceptive Acts or Practices
7.08:  Validation of Debts
7.09:  Relation to Other Laws
7.10:  Preemption by Federal Law

7.01:  Purpose of Regulation

The purpose of 940 CMR 7.00 is to establish standards, by defining unfair or deceptive acts or practices, for the collection of debts from persons within the Commonwealth of Massachusetts.

7.02:  Scope

940 CMR 7.00 applies only to the collection of debts, as defined in 940 CMR 7.00, and no conduct which is not the collection of debts or any part thereof is affected.

7.03:  Definitions

Communication or Communicating  means conveying information directly or indirectly to any person through any medium excluding nonidentifying communications.

Creditor  means any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor and shall also include a buyer of delinquent debt who hires a third party or an attorney to collect such debt provided, however, that a person shall not be deemed to be engaged in collecting a debt, for the purpose of 940 CMR 7.00, if his or her activities are solely for the purpose of serving legal process on another person in connection with the judicial enforcement of a debt.

Debt  means money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment.

Debtor  means a natural person, or his or her guardian, administrator or executor, present or residing in Massachusetts who is allegedly personally liable for a debt.

Nonidentifying Communication  means any communication with any person other than the debtor in which the creditor does not convey any information except the name of the creditor and in which the creditor makes no inquiry other than to determine a convenient time and place to contact the debtor.

Person  means any natural person, corporation, trust, partnership, incorporated or unincorporated association and any other legal entity; provided, however, that if a creditor comprises or employs more than one natural person, all such individuals shall be deemed to be one and the same "person" with respect to any debt owed or alleged to be owed to such a creditor.

Time-barred Debt  means any debt that is not enforceable in a judicial proceeding because the applicable statute of limitations has run.

940 CMR:  OFFICE OF THE ATTORNEY GENERAL

7.04:  Contact with Debtors

    (1)  It shall constitute an unfair or deceptive act or practice for a creditor to contact a debtor in any of the following ways:

        (a)  Threatening to sell or assign to another the obligation of a debtor with an attending representation or implication that the result of such sale or assignment would be that a debtor would lose any defense to the claim or would be subjected to harsh, vindictive or abusive collection attempts;

        (b)  Threatening that nonpayment of a debt will result in:

            1.  Arrest or imprisonment of any debtor; or

            2.  Seizure, garnishment, attachment, or sale of any property or wages of any person or the taking of other action requiring judicial order without informing the debtor that there must be in effect a judicial order permitting such action before it can be taken or unless such action is lawful and the creditor intends to take such action; or

            3.  Any action that cannot legally be taken or that is not intended to be taken.

        (c)  Using profane or obscene language;

        (d)  Communicating by telephone without disclosure of the name of the business or company of the creditor and without disclosure of the first and last name of the individual making such communication or a first name and a personal identifier for such individual such as a code or alias, provided however, that any such individual utilizing a personal identifier shall only use one such personal identifier at all times and provided that a mechanism is established by the creditor to identify the person using such personal identifier;

        (e)  Causing expense to any debtor in the form of long distance or collect telephone calls, text messaging, download fees, data usage fees, or other similar charges, except the creditor may place non-collect telephone calls to the debtor's place of residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number, subject to the limitations set forth in 940 CMR 7.04(1)(f);

        (f)  Initiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number and two such communications in each 30-day period other than at a debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number, for each debt, provided that for purposes of 940 CMR 7.04(1)(f), a creditor may treat any billing address of the debtor as his or her place of residence, and provided further, that a creditor shall not be deemed to have initiated a communication with a debtor if the communication by the creditor is in response to a request made by the debtor for said communication;

        (g)  Placing telephone calls at times known to be times other than the normal waking hours of a debtor, or if normal waking hours are not known, at any time other than between 8:00 A.M. and 9:00 P.M. eastern time;

        (h)  Placing any telephone calls to the debtor's place of employment if the debtor has made a written or oral request that such telephone calls not be made at the place of employment, provided, that any oral request shall be valid for only ten days unless the debtor provides written confirmation postmarked or delivered within seven days of such request. A debtor may at any time terminate such a request by written communication to the creditor;

        (i)  Failing to send the debtor the following notice in writing within 30 days after the first communication to a debtor at his or her place of employment regarding any debt, provided that a copy of the notice shall be sent every six months thereafter so long as collection activity by the creditor on the debt continues and the debtor has not made a written request as described in 940 CMR 7.04(1)(h).

NOTICE OF IMPORTANT RIGHTS

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

940 CMR:  OFFICE OF THE ATTORNEY GENERAL

7.04:  continued

(j)  Visiting the household of a debtor at times other than the normal waking hours of such debtor, or if normal waking hours are not known, at any time other than between 8:00 A.M. and 9:00 P.M., eastern time provided however that in no event shall such visits, initiated by the creditor, exceed one in any 30-day period for each debt, excluding visits where no person is contacted in the household, unless a debtor consents in writing to more frequent visits, provided, further, that at all times the creditor must remain outside the household unless expressly invited inside by such debtor; and provided further, that visits to the household of a debtor which are solely for the purpose of repossessing any collateral or property of the creditor (including but not limited to credit cards, drafts, notes or the like), are not limited under 940 CMR 7.04(1)(j);

(k)  Visiting the place of employment of a debtor, unless requested by the debtor, excluding visits which are solely for the purpose of repossessing any collateral or property of the creditor;

(l)  Confronting or communicating in person with a debtor regarding the collection of a debt in a public place, excluding courthouses, the creditor's place of business, other places agreed to by a debtor, offices of an attorney for the creditor, or places where the conversation between the creditor and a debtor cannot be reasonably overheard by any other person not authorized by the debtor;

(m)  Stating that the creditor will take any action, including legal action, which in fact is not taken or attempted on such debtor's account, unless an additional payment or a new agreement to pay has occurred within the stated time period.  For purposes of 940 CMR 7.04(1)(m), the time period in connection with such statement shall be presumed to expire 14 days from the date the statement is made, unless otherwise indicated by the creditor;

(2)  Subject to applicable law, after notification from an attorney for a debtor that all contacts relative to the particular debt in question should be addressed to the attorney, a creditor may contact the debtor only to perfect or preserve rights against the debtor or collateral securing the debt;

(3)  940 CMR 7.04(1)(j) and (1)(m) and (2) shall not apply to telephone, gas and electric utility companies regulated by M.G.L. c. 164 and the Department of Public Utilities, or the Department of Telecommunications and Cable.

7.05:  Contact with Persons Residing in the Household of a Debtor

(1)  A creditor may assume that all contacts directed to the debtor's household are received either by the debtor or persons residing in the household of the debtor unless the creditor knows or should know information to the contrary.

(2)  It shall constitute an unfair or deceptive act or practice for a creditor to imply the fact of a debt, orally or in writing, to persons who reside in the household of a debtor, other than the debtor.

(3)  It shall constitute an unfair or deceptive act or practice for a creditor to contact or threaten to contact persons who reside in the household of a debtor, other than the debtor, in any of the following ways:

(a)  Using profane or obscene language;

(b)  Placing telephone calls, disclosing the name of the business, or company of the creditor, unless the recipient expressly requests disclosure of the business or company name;

(c)  Causing expense to any such person in the form of collect or long distance telephone calls, text messaging, download fees, data usage fees or other similar charges;

(d)  Engaging any such person in non-identifying communication via telephone with such frequency as to be unreasonable or to constitute harassment to such person under the circumstances, and engaging any person in communications via telephone, initiated by the creditor, in excess of two calls in each seven-day period at a debtor's residence and two calls in each 30-day period other than at a debtor's residence, for each debt;

(e)  Placing telephone calls at times known to be times other than the normal waking hours of the person called, or if normal waking hours are not known, at any time other than between 8:00 A.M. and 9:00 P.M. eastern time;

940 CMR:  OFFICE OF THE ATTORNEY GENERAL

7.05:  continued

(f)  Visiting the place of employment of any such person, unless requested by such person
(g)  Confronting or communicating in person with any such person regarding the collection
of a debt in a public place, excluding courthouses, the creditor's place of business, other
places agreed to by the person, offices of the person's attorney or of the attorney for the
creditor or debtor, or places where the conversation between the creditor and such person
cannot reasonably be overheard by anyone not authorized by such person;
(h)  Using language on envelopes or on any other printed or written materials, except
materials enclosed in sealed envelopes, indicating or implying that the communication relates
to the collection of a debt, which in the normal course of business may be received or
examined by any such person residing in the household of a debtor;

(4)  Nothing in 940 CMR 7.05 shall prohibit any contact required by law to be made by a
creditor or attorney acting on his or her behalf engaged in collection activities, including notices
required prior or subsequent to repossession.

7.06:  Contact with Other Persons Regarding a Debt

The following shall apply to contact with persons not covered by 940 CMR 7.04 and 7.05:

(1)  It shall constitute an unfair or deceptive act or practice for a creditor to contact or threaten
to contact persons in connection with a debt in any of the following ways:
(a)  Implying the fact of the debt to any such person;
(b)  Using language on envelopes or any other printed or written materials, except materials
enclosed in sealed envelopes, indicating or implying that the contact relates to the collection
of a debt, which in the normal course of business, may be received or examined by persons
other than the debtor;
(c)  Causing expense to any person in the form of collect or long distance telephone calls,
text messaging, download fees, data usage fees or other similar charges.

(2)  The following contacts shall not be deemed unlawful:
(a)  Any contact with any such persons which results solely from efforts to contact the debtor
at the debtor's place of residence or at places other than a debtor's residence via telephone
pursuant to 940 CMR 7.04(1)(f), provided the creditor limits the contact to disclosing only
the  first and last name of the individual making such communication on behalf of the
creditor or a first name and unique personal identifier established by the creditor to identify
the person making such communication, and the telephone number to which the debtor may
return the telephone call, unless the recipient expressly requests the disclosure of the business
or company name; and provided further, that with respect to contacts made at the debtor's
place of employment, the debtor has not made a request pursuant to 940 CMR 7.04(1)(h) that
such contact not be made;
(b)  Any contact with any such persons made for the purpose of and limited to determining
the current location of the debtor, provided the creditor, after making reasonable attempts to
locate the debtor, does not have correct information as to the debtor's current residence or
location and provided further, that the creditor reasonably believes that the earlier response
of such person, if any, is erroneous or incomplete and that such person now has correct or
complete locational information, and in no event shall such contacts exceed three per such
person in any 12-month period for each debt. The creditor in making said contacts may reveal
only the first and last name of the individual making such communication on behalf of the
creditor or a first name and unique personal identifier established by the creditor to identify
the person making such communication, unless the recipient expressly requests the disclosure
of the business or company name. Any contacts at the debtor's place of employment, made
pursuant to 940 CMR 7.06, shall be lawful, unless a request was made by the debtor,
pursuant to 940 CMR 7.04(1)(h), that such contacts not be made;
(c)  Any contact with respect to such debt to any attorney or other person employing or
employed by the creditor, or to any attorney employed by the debtor; to a consumer reporting
agency; or, where there are actual negotiations or arrangements for assigning or purchasing
or settling of accounts, to potential assignees or purchasers or the like; or to persons who
have any interest in property securing all or part of the debt; or to any *bona fide* credit
counseling agency not connected to the creditor and designated in writing by the debtor;

7.06:  continued

> (d)  Any communication of the fact of such debt by an attorney involved in litigation in
> connection with such debt, or after a judgment on the debt has been entered by a court of
> competent jurisdiction;
>
> (e)  Any contact required by law to be made by a creditor engaged in collection activities,
> including notices required prior or subsequent to repossession.

### 7.07:  General Unfair or Deceptive Acts or Practices

It shall constitute an unfair or deceptive act or practice to engage in any of the following
practices to collect or attempt to collect any debt:

(1)  Any false representation that the creditor has information in his or her possession or
something of value for the debtor.

(2)  Any knowingly false or misleading representation in any communication as to the character,
extent or amount of the debt, or as to its status in any legal proceeding, provided, however, that
an incorrect or estimated bill submitted by a gas or electric utility company regulated by
M.G.L. c. 164, and the Department of Public Utilities shall not be prohibited by 940 CMR 7.07.

(3)  Any false or misleading representation that a creditor is vouched for, bonded by, affiliated
with, or is an instrumentality, agency, or official of the state, federal or local government.

(4)  Any false or misleading representation that a creditor is an attorney or any other officer of
the court.

(5)  The use, distribution or sale of any written communication which simulates, or which is
falsely represented to be, or which otherwise would reasonably create a false impression that it
was, a document authorized, issued or approved by a court, a government official or other
governmental authority.

(6)  Any representation that an existing obligation of a debtor may be increased by the addition
of attorney's fees, investigation fees, service fees, or any other fees or charges, if in fact such fees
or charges may not legally be added to the existing obligation.

(7)  Any solicitation or obtaining of any written statement or acknowledgement in any form
containing an affirmation of any obligation by a debtor who has been adjudicated bankrupt,
without clearly and conspicuously disclosing the nature and consequences of such affirmation.

(8)  Any false, deceptive, or misleading representation, communication, or means in connection
with the collection of any debt or to obtain information concerning a debtor.

(9)  Any false or misleading representation or implication that a sale, referral, or other transfer
of any interest in a debt shall cause the debtor to:
    (a)  lose any claim or defense to payment of the debt; or
    (b)  become subject to any practice prohibited by 940 CMR 7.00.

(10)  Any false or misleading representation or implication that the debtor committed any crime
or other conduct in order to disgrace the debtor.

(11)  Communicating or threatening to communicate to any person credit information which is
known or which should be known to be false including, without limitation, the failure to
communicate that a disputed debt is disputed.

(12)  Any false or misleading representation or implication that documents are legal processes.

(13)  Any false or misleading representation or implication that documents are not legal
processes or do not require action by the debtor.

940 CMR:   OFFICE OF THE ATTORNEY GENERAL

7.07:   continued

(14)   Any false or misleading representation or implication that a creditor operates or is employed by a consumer reporting agency.

(15)   Using any business, company or organization name other than the true name of the creditor's business, company or organization.

(16)   The collection of any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(17)   Requesting or demanding from a debtor a post dated check, draft, order for withdrawal or other similar instrument or method in payment for the debt or any portion thereof, or for a creditor to negotiate such instrument before the due date of the instrument.

(18)   Taking or threatening to take any non-judicial action to effect dispossession or disablement of property if:
(a)   there is no present right to possession of the property claimed as collateral through a court order or an enforceable security interest;
(b)   there is no present intention to take possession of the property;
(c)   the creditor knows or has reason to know that demands for payment and/or legal notices were not directed to the debtor's current address; or
(d)   the property is exempt from seizure on execution because its value does not exceed the value for exemption set forth in M.G.L. c. 235, § 34, or the property is otherwise exempt by law from such dispossession or disablement; 940 CMR 7.07(18)(d) shall not apply to first mortgage foreclosures properly conducted in accordance with Massachusetts law.

(19)   Taking possession of or selling upon execution property that is exempt from seizure on execution because its value does not exceed the value for exemption set forth in M.G.L. c. 235, § 34, or the property is otherwise exempt by law from such dispossession or disablement; 940 CMR 7.07(19) shall not apply to first mortgage foreclosures properly conducted in accordance with Massachusetts law.

(20)   Communicating with a debtor regarding a debt by postcard.

(21)   Reporting to a consumer reporting agency on transactions or experiences with a debtor in a name other than that of the creditor.

(22)   Failing to disclose the telephone number and office hours of the creditor or his agents on all written communications to the debtor.

(23)   Requesting any information about the debtor or the debtor's accounts or assets other than information the creditor, in good faith, believes will assist in the collection of the debt owed to the creditor.

(24)   Collecting or attempting to collect from any person payment of any debt that the creditor knows, or has reason to know based on a good faith determination, is a time-barred debt, or seeking or obtaining from any person an admission, affirmation, acknowledgement of a new promise to pay, or any waiver of legal rights or defenses with regard to any debt that the creditor knows or has reason to know is a time-barred debt, unless the creditor discloses that the debt may be unenforceable through a lawsuit because the time for filing suit may have expired, and that the debtor is not required by law to sign any admission, affirmation, or acknowledgement of, or new promise to pay the debt, or to make any payment on the debt, or to waive any rights with regard to the effect of the running of the applicable statute of limitations.
(a)   A creditor who makes the following disclosure shall be deemed to have complied with the requirements of 940 CMR 7.07(24):

940 CMR:  OFFICE OF THE ATTORNEY GENERAL

7.07:  continued

WE ARE REQUIRED BY REGULATION OF THE MASSACHUSETTS ATTORNEY
GENERAL TO NOTIFY YOU OF THE FOLLOWING INFORMATION.  THIS
INFORMATION IS NOT LEGAL ADVICE:  THIS DEBT MAY BE TOO OLD FOR
YOU TO BE SUED ON IT IN COURT.  IF IT IS TOO OLD, YOU CANNOT BE
REQUIRED TO PAY IT THROUGH A LAWSUIT.  TAKE NOTE: YOU CAN
RENEW THE DEBT AND THE STATUTE OF LIMITATIONS FOR THE FILING OF
A LAWSUIT AGAINST YOU IF YOU DO ANY OF THE FOLLOWING:  MAKE
ANY PAYMENT ON THE DEBT, SIGN A PAPER IN WHICH YOU ADMIT THAT
YOU OWE THE DEBT OR IN WHICH YOU MAKE A NEW PROMISE TO PAY;
SIGN A PAPER IN WHICH YOU GIVE UP OR WAIVE YOUR RIGHT TO STOP
THE CREDITOR FROM SUING YOU IN COURT TO COLLECT THE DEBT.
WHILE THIS DEBT MAY NOT BE ENFORCEABLE THROUGH A LAWSUIT, IT
MAY STILL AFFECT YOUR ABILITY TO OBTAIN CREDIT OR AFFECT YOUR
CREDIT SCORE OR RATING.

(b)  In the case of written communications, the disclosures required by 940 CMR 7.07(24)(b)
shall be clear and conspicuous by appearing in a type which is a minimum of eight-point type
and said disclosure shall be placed on the front page of the communication;

(c)  In the case of oral communications, the disclosures required by 940 CMR 7.07(24)(c)
shall be made immediately before or immediately after the first statement requesting
payment, or, if no request for payment is made, no later than immediately after reference to
the debt is first made.

7.08:  Validation of Debts

(1)  It shall constitute an unfair or deceptive act or practice for a creditor to fail to provide to a
debtor or an attorney for a debtor the following within five business days after the initial
communication with a debtor in connection with the collection of a debt, unless the following
information is contained in the initial communication or the debtor has paid the debt:

(a)  The amount of the debt;

(b)  The name of the creditor to whom the debt is owed;

(c)  A statement that unless the debtor, within 30 days after receipt of the notice, disputes
the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the
creditor; and

(d)  A statement that if the debtor notifies the creditor in writing within 30 days after receipt
of this notice that the debt, or any portion thereof is disputed, the creditor will obtain
verification of the debt and provide the debtor, or an attorney for the debtor, additional
materials described in 940 CMR 7.08(2).

(2)  If the debtor, or any attorney for the debtor, notifies the creditor in writing within the 30-day
period described in 940 CMR 7.08(1), that the debt, or any portion thereof, is disputed, the
creditor shall cease collection of the debt, or any disputed portion thereof, until the creditor
verifies the debt and provides the debtor, or any attorney of the debtor, by first class mail, the
following materials:

(a)  All documents, including electronic records or images, which bear the signature of the
debtor and which concern the debt being collected;

(b)  A ledger, account card, account statement copy, or similar record, whether paper or
electronic, which reflects the date and amount of payments, credits, balances, and charges
concerning the debt, including but not limited to interest, fees, charges or expenses incidental
to the principal obligation which the creditor is expressly authorized to collect by the
agreement creating the debt or permitted to collect by law;

(c)  The name and address of the original creditor, if different from the collecting creditor;
and

(d)  A copy of any judgment against the debtor.

Pursuant to 940 CMR 7.08(2), the creditor must provide those materials described in
940 CMR 7.08(2)(a) through (d) which are in the possession, custody or control of the creditor.
If the creditor does not possess, have custody of, or control the materials described in 940 CMR
7.08(2)(a) through (d), the creditor shall cease collection of the debt until the creditor has made
reasonable efforts to obtain the necessary information and provide this information to the debtor.

940 CMR:  OFFICE OF THE ATTORNEY GENERAL

7.09:  Relation to Other Laws

940 CMR 7.00 does not exempt any person from complying with existing laws or rules of professional conduct with respect to debt collection practices.  940 CMR 7.00 is not intended to supersede or in any way limit rights and protections provided to consumers under 114.6 CMR 13.00, the Health Safety Net Eligible Services Regulations, and state and federal foreclosure laws.  To the extent that any provision of 940 CMR 7.00 is specifically inconsistent with the Massachusetts Rules of Professional Conduct, as currently appearing in Supreme Judicial Court Rule 3:07 and then only to the extent of the inconsistency, 940 CMR 7.00 is not applicable. Provisions of 940 CMR 7.00 that contain language substantively identical to provisions within 15 U.S.C. § 1692, *et seq*., the Fair Debt Collection Practices Act, should be interpreted consistently with that Act.

7.10:  Preemption by Federal Law

In the event any conflict exists between the provisions of 940 CMR 7.00 and the provisions of Federal statutes or regulations relating to the collection of debts, such Federal law shall control but only to the extent that such Federal law mandates actions or procedures prohibited by 940 CMR 7.00.


REGULATORY AUTHORITY

940 CMR 7.00:  M.G.L. c. 93A, § 2(c).